# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIWEST HEALTHCARE ALLIANCE CORPORATION and MMD, LLC<br><br>          Plaintiffs,<br>    vs.<br><br>JIMSAIR AVIATION SERVICES, INC.<br>          Defendant. | CASE NO. 05CV2247 IEG (LSP)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 9] |

Presently before the Court is Jimsair Aviation Services, Inc.'s ("defendant") motion for partial summary judgment.[1] For the following reasons, the Court grants defendant's motion.

## BACKGROUND

**A.    Factual Background**

Defendant provides aircraft towing services at San Diego International Airport–Lindbergh Field. [Answer ¶ 9.] On June 6, 2005, while defendant was towing plaintiffs' Gulf Stream G-200 ("airplane"), the airplane became detached from the towbar. [Id. ¶¶ 10, 15.] The airplane rolled until it collided into another parked plane. [Compl. ¶ 15.] At the time of the accident, the airplane had flown for fewer than three hundred total hours. [Answer ¶ 17.]

Gulfstream Aerospace Corporation ("manufacturer") performed repairs on the airplane.

---

[1] Also presently before the Court is defendant's objection to the declaration of Karl G. Gimbel. In deciding this motion, the Court has taken only admissible evidence into account.

1  [Pahl Decla. ISO Motion, Exhibit D, pp. 11-12.]  The repairs consisted of replacing the damaged
2  parts with brand-new parts.  [Defendant's Separate Statement of Undisputed Facts in Support of
3  Motion ("Def. Stmt. of Facts") ¶ 3.]  The manufacturer then stated in its Inspection/Maintenance
4  Record: "[t]his Aircraft . . . has been found to be in an airworthy condition with regard to the
5  maintenance performed and is approved for return to service."  [Id., Exhibit D, p. 12.]
6       The airplane's insurer paid the plaintiffs for the cost of airplane repair along with
7  reimbursement for loss of use.  [Def. Stmt. of Facts ¶ 7.]  Once the airplane's insurer settled its
8  claim with defendant's insurer, the airplane's insurer then released defendant from any liability
9  under its policy.  [Pahl Decla. ISO Motion, Exhibit F, p. 16.]

**B.    Procedural Background**

Plaintiffs filed their complaint on December 9, 2005.  [Doc. No. 1.]  Plaintiffs alleged causes of action for (1) negligence, (2) negligence per se, breach of bailment duties under (3) common law and (4) statute, and (5) breach of contract.

On February 16, 2006, defendant answered the complaint.  [Doc. No. 2.]

On June 29, 2006, defendant moved for partial summary judgment on damages issues. [Doc. No. 9.] On August 8, 2006, plaintiffs filed their opposition.[2]  [Doc. No. 22.]  On September 14, 2006, defendant filed its reply.  [Doc. No. 24.]  After hearing oral argument on September 25, 2006, the Court took the matter under submission.

**DISCUSSION**

**A.    Legal Standard**

"Under Rule 56(c), summary judgment is proper when the pleadings and discovery, read in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Armstrong v. Burlington Northern R. Co., 139 F.3d 1277, 1278 (9th Cir. 1998) (quoting 20th Century Ins. Co. v. Liberty Mut. Ins. Co., 965 F.2d 747, 750 (9th Cir. 1992)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" when "the evidence presented is such that

---

[2] The Court hereby disregards plaintiffs' opposition of July 31, 2006.  [Doc. No. 16.]  That opposition lacked a Table of Contents or Table of Authorities.

1  a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff
2  or the defendant." Anderson, 477 U.S. at 255.
3      Once the moving party meets the requirement of Rule 56, the burden shifts to the party
4  resisting the motion, who "must set forth specific facts showing that there is a genuine issue for
5  trial." Anderson, 477 U.S. at 256. It is not enough for the party opposing a properly supported
6  motion for summary judgment to "rest on mere allegations or denials of his pleadings." Id.
7  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may
8  reasonably be resolved in favor of either party." Id. at 250. To make such a showing, the
9  nonmoving party must go beyond the pleadings to designate specific facts showing that there is a
10 genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

11 **B.    Analysis**

12     Defendant has moved for a summary judgment order barring plaintiffs from recovering
13 damages for the airplane's diminution of value. Defendant predicates its motion on a simple
14 proposition: plaintiffs have already received payment for cost of repair and loss of use.
15     California law provides, "For the breach of an obligation not arising from contract, the
16 measure of damages . . . is the amount which will compensate for all the detriment proximately
17 caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333 (2005).[3] In
18 actions for tortious injury to personal property, "the proper measure of damages . . . is the
19 difference between its market value immediately before and immediately after the injury; but if it
20 can be completely repaired for a lesser sum, the cost of repairing becomes the measure of
21 damages." Lee K. Nicolaisen, 23 Cal. Jur. 3d Damages, § 69 (2006); accord Heninger v. Dunn,
22 101 Cal. App. 3d 858, 861-62 (Cal. Ct. App. 1980). In other words, the plaintiff ordinarily
23 receives the lesser of the cost of repair or diminution in value, but not both. Safeco Ins. Co. of

---

[3] This Order discusses exclusively the damages that plaintiffs can recover for its causes of action in tort (i.e., the first four causes of action). California Civil Code § 333 explicitly does not apply to breaches of contract. The California Civil Code separately addresses those damages. See Cal. Civ. Code §§ 3300-3321 (2005). Therefore, this Order has no bearing on plaintiffs' available remedies for the fifth cause of action.

1  Am. v. J & D Painting, 17 Cal. App. 4th 1199, 1202 (Cal. Ct. App. 1993).[4]  Where the plaintiff has
2  already elected to repair the property, the plaintiff will recover the reasonable cost of repairs and
3  loss of use, but not the diminution of value, regardless of which measure is larger.  6 B. E. Witkin
4  et al., Summary of California Law, Torts § 1718 (10th ed. 2005).

5  　　　　Applied to these facts, plaintiffs elected to have the manufacturer repair the aircraft at its
6  facility in Dallas, Texas.  [Plaintiffs' Statement of Facts ("Pls. Stmt. of Facts") ¶ 2.]  For this
7  election, plaintiffs can receive the reasonable cost of repair and loss of use.  Safeco, 17 Cal. App.
8  4th at 1202.  Plaintiffs cannot cumulatively recover for diminution of value.  Id.; Mozzetti v. City
9  of Brisbane, 67 Cal. App. 3d 565, 577 (Cal. Ct. App. 1977).  Plaintiffs have already received
10 $969,183.43 from the airplane's insurer for the actual cost of repair and reimbursement for
11 substitute aircraft rental and expenses.  [Pahl Decla. ISO Motion, Exhibit F, p. 16.]  Therefore,
12 plaintiffs' tort claims are entirely satisfied.  6 B. E. Witkin et al., Summary of California Law,
13 Torts § 1718 (10th ed. 2005).

14 　　　　Nonetheless, plaintiffs invoke an exception to the general rule for situations when the
15 injured property "cannot be completely repaired."  Byrne v. W. Pipe & Steel Co. of Cal., 81 Cal.
16 App. 270, 274 (Cal. Ct. App. 1927).  In such cases, damages equal "the difference between [the
17 personal property's] value before the injury and its value after the repairs have been made, plus the
18 reasonable cost of making the repairs."  Id., quoted by Merchant Shippers Ass'n v. Kellogg
19 Express & Draying Co., 28 Cal. 2d 594, 600 (Cal. 1946).  In Merchant Shippers, a brand-new
20 sanding machine broke and cracked when the common carrier defendant dropped the machine in
21 transit.  28 Cal. 2d at 596.  The ultimate recipient refused to accept the machine, even after it was
22 repaired.  Id.  In upholding a jury verdict that included both cost of repairs and diminution in value,
23 the California Supreme Court emphasized the manufacturer's unwillingness to guarantee the
24 machine as repaired and the need for further testing before the machine would function properly.
25 Id. at 601.

26 　　　　The Court agrees with defendant that the Merchant Shippers exception does not apply to

---

28  [4] Safeco arises in the context of real property, not personal property.  However, to state the general rule, a real property case suffices because the general rule is the same for both real and personal property.

these facts because the airplane has been "completely repaired." See Byrne, 81 Cal. App. at 274. First, the airplane is "physically" repaired because "the damaged parts were completely replaced with new parts." [Defendant's Memorandum of Points and Authorities ("Memo. ISO Motion"), at 5.] The repair did not require the filing of a FAA Form 337, which must be completed for major repairs and alterations. [Def. Stmt. of Facts ¶¶ 3-4.] Second, the airplane is "functionally" repaired because the airplane "returned to service to serve its intended purpose." [Reply, at 3.] The airplane's "intended purpose," per defendants, is "transport[ing] people by air." [Memo. ISO Motion, at 5.] After repairing the airplane, the manufacturer issued a certification of airworthiness, and the plane is now flying again. [Pahl Decla. ISO Motion, Exhibit D, p. 12.]

Plaintiffs insist that complete repair did not take place because the repairs did not "return the [airplane] to its pre-injury value." [Opp., at 13.] Plaintiffs rely on dicta in Merchant Shippers that the concept of complete repair "presupposes that the damaged property can be restored to its former state with no depreciation in its former value." 28 Cal. 2d at 600. In their opposition and at oral argument, plaintiffs argued that the airplane has diminished value because Federal Aviation Administration regulations mandate documentation of the airplane's accident history. [Id., at 15.] Because this accident history will follow the airplane throughout its commercial life, the airplane will always receive a lower price in the marketplace. [Id.]

However, plaintiffs misconstrue the conception of complete repair that the Merchant Shippers court had in mind. Even after repairs, the sanding machine in Merchant Shippers was so badly damaged that the manufacturer would not guarantee its condition. 28 Cal. 2d at 601. Furthermore, "the machine would still have to be completely overhauled and tested, preferably at the factory, before it would give satisfactory precision service in accordance with its design." Id. By contrast, the airplane in this case received a manufacturer's guarantee from the start. Even before making the repairs, the manufacturer drafted a letter indicating "the aircraft is repairable" and "[o]nce repaired, the aircraft will be at least equal to its originally manufactured condition." [Paul Decla. ISO Motion, Exhibit A, p. 4.] After making the repairs, the manufacturer approved the airplane for return to service, without need for further testing. [Id., Exhibit D, p. 12.] These factual distinctions enable the Court to find, in this case, that the manufacturer indeed "completely

repaired" the airplane.  Byrne, 81 Cal. App. at 274.

If these plaintiffs' allegations of diminished value were sufficient to invoke Merchant Shippers, the exception would swallow the general rule.[5] As both parties acknowledged at oral argument, in a choice between an item that was damaged but completely repaired and the same item never damaged, one would choose the undamaged item.  In this sense, the undamaged item always carries a higher "value."  But, if the Merchant Shippers exception attached whenever the market preferred the undamaged item, the general rule would never apply.  Therefore, instead of "pre-accident value," the general rule relies on complete repair as the legal standard. and, as discussed above, the airplane was completely repaired in both its physical and functional aspects.

Plaintiffs couch their argument in the broad theme of California's "flexibility" in computing damages.[6]  [Opp., at 5-6, 8-9.]  Although this proposition is generally true, California courts have explicitly declined to be flexible in the way plaintiffs desire.  In real property cases where the cost of repairs exceeds the diminution of value, California law "flexibly" allows for the recovery of cost of repairs if the plaintiff can show (1) the loss of value to the plaintiff is greater than the diminution in market value ("personal reason exception") and (2) the repairs will definitely be made.  Safeco, 17 Cal. App. 4th at 1203; see also Heninger, 101 Cal. App. at 863 (stating these prerequisites in the conjunctive).  However, the Safeco court rejected the plaintiff's argument to extend this rule to allow for occasions when diminution in value would be awarded

---

[5] At oral argument, plaintiffs' counsel emphasized the airplane deserved special treatment because it is a unique piece of personal property.  Therefore, according to plaintiffs, the general rule would still have viability in a "standard" personal property case involving, e.g., an automobile.  Plaintiffs cite no authority for the proposition that the general rule of personal property damages does not apply to airplanes because they are so technologically sophisticated.  Nor does it matter that plaintiffs only own this single plane and are not in the commercial airline business.  In applying the general rule in automobile cases, California courts do not treat individual vehicle owners differently from car dealerships.

[6] To support this proposition, plaintiffs cite dicta from a string of factually inapposite cases. See Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv., 189 F.3d 1017 (9th Cir. 1999) (securities fraud); Strebel v. Brenlar Inv., Inc., 135 Cal. App. 4th 740 (Cal. Ct. App. 2006) (fraudulent failure to disclose in real property sale); Santa Barbara Pistachio Ranch v. Chowchilla Water Dist., 88 Cal. App. 4th 439 (Cal. Ct. App. 2001) (destruction of fruit trees).

even when it exceeds the cost of repair.[7] Id. This Court cannot open a door in state law that California courts have already closed.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** defendant's motion for partial summary judgment on damages issues. The Court hereby strikes plaintiffs' claim for relief for diminution in value as to the first four causes of action in plaintiffs' complaint.

**IT IS SO ORDERED.**

DATED: September 30, 2006

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[7] The Safeco court grounded its holding in proximate causation. I.e., the plaintiff alleged a diminution in value–loss of a homeowner's opportunity to sell in a booming housing market while the house was repaired–that was not proximately caused by defendant's negligence. Nonetheless, the upshot of Safeco is that plaintiffs cannot invoke "flexibility" to support their argument that diminution in value should be awarded when the amount exceeds cost of repair.